WILLIAM H. WEART, PLAINTIFF-APPELLANT, v. FIRST NATIONAL BANK OF DUNELLEN, DEFENDANT-RESPONDENT.

Argued February 12, 1935—Decided May 17, 1935.

For the plaintiff-appellant, *Robert Carey, Jr.*

For the defendant-respondent, *Joseph J. Mutnick.*

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment for the defendant entered upon the direction of Judge Lawrence sitting in the Somerset Circuit. The action was to recover notarial fees received by the defendant bank during a six-year period preceding the institution of the action while plaintiff was employed by the bank as cashier, the notarial services sued upon having been rendered in the name, and over the signature, of the plaintiff as notary public. At the close of the trial plaintiff moved for the direction of a verdict in his favor and was refused. Defendant moved for a verdict in its favor, and this motion was granted. The only point argued on the appeal is the alleged error in this disposition of the case.

Plaintiff had been a notary public, duly qualified and equipped, for years before he had any connection with the defendant bank. From July 1st, 1923, to January 27th, 1932, he was the cashier of the bank and received a substantial compensation far in excess of what the notarial fees amount to. In addition he was a stockholder of the bank and a member of the board of directors. He kept the record of the minutes of the meetings of the board. At each recurring six months' period he compiled and swore to the report of earnings, expenses and dividends of the defendant bank, which reports were made to the comptroller of the currency. He submitted these reports to the board and, as a member of the board, voted to declare dividends from the earnings shown on the reports. Within the earnings thus shown were the

notarial receipts which he now seeks to recover. As a stockholder he received his prorated part of the declared dividends. The services performed by the plaintiff as notary public were not the result of contract. There was no contract or agreement with respect to them. He voluntarily went ahead and did them, to the extent of signing and appending his seal to the notarial certifications. The actual work was done by other employes of the bank. The supplies, records, papers, postage and clerical services incident to these services were all provided by and paid for by the bank. Plaintiff made no request for an accounting for the fees or any part of them, or for any payment with respect thereto until after he had resigned as cashier and discontinued his connection with the bank. He testified that he did not know until after that time that he was entitled to them; but he surely knew that statutory fees attached to his function as notary public and he also knew that these were the fees which were paid to the bank and by the bank applied, with his participating authority, to the purposes above mentioned.

*Geddis* v. *Westside National Bank,* 7 *N. J. Mis. R.* 245; *affirmed,* 106 *N. J. L.* 238, and *Kip* v. *Peoples Bank and Trust Co.,* 110 *Id.* 178, are cited in plaintiff's behalf. The trial judge held that these decisions did not apply, and we agree therein. Each of the cases turned upon an agreement that was determined to be against public policy. It was further said in the Kip case: "We express no opinion on the power of the officer to waive or remit a fee if and after it shall have been earned. That question is not before us." We think that when one so intimately connected with the business management of a country bank as is the cashier voluntarily and perfunctorily executes notarial papers and for and in the name of the bank collects the notarial fees and puts them in the bank treasury, credits the fees as bank earnings and reports them as such to the federal government and the board of directors, as a director sits by and participates in the acceptance of those moneys as bank earnings applicable to dividends and declares dividends therefrom and as a stockholder acquiesces therein and receives his prorated share of

the dividends thereon, he has estopped himself from there-
after claiming that the moneys should have been paid to him
and were his property rather than that of the bank. In the
absence of some legal taint, as for instance that the act is
required by and done in fulfillment of a contract against
public policy, it is lawful for a notary public to waive or
remit a fee after it has been earned, and for him, after the
fee has been earned, to take such a position with respect to it
that he may be held to have waived it. We find nothing con-
trary to public policy in the voluntary waiver by a notary
public of his statutory fee for an accomplished service. That
is the position in which we find the plaintiff.

Judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PAR-
KER, LLOYD, CASE, BODINE, DONGES, PERSKIE, KAYS, HET-
FIELD, DEAR, WELLS, JJ. 12.

*For reversal*—HEHER, VAN BUSKIRK, JJ. 2.